Henry E. Linthicum and Pauline Linthicum v. Commissioner.
Linthicum v. Commissioner
Docket No. 2759-66.
United States Tax Court
T.C. Memo 1968-97; 1968 Tax Ct. Memo LEXIS 202; 27 T.C.M. (CCH) 440; T.C.M. (RIA) 68097; May 23, 1968. Filed Ottway Burton, White Bldg., Asheboro, N.C., for the petitioners. Harvey S. Jackson, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined an income tax deficiency in the amount of $155.84 for the taxable year 1964. The principal issue is whether the petitioners are entitled to a dependency exemption deduction for *203 the mother of the petitioner Pauline Linthicum under section 151 of the Internal Revenue Code of 1954. The deductibility, under section 213 of the Code, of medical expenses incurred by the petitioners on behalf of the mother will depend upon our resolution of the principal issue. Findings of Fact The petitioners, husband and wife, were residents of Randleman, North Carolina, at the time the petition was filed herein. They filed their joint Federal income tax return for the taxable year 1964 with the district director of internal revenue, Greensboro, North Carolina. Mrs. Loraine Hinshaw is the mother of the petitioner Pauline Linthicum. During the taxable year 1964 the petitioners and Mrs. Hinshaw lived in a house in Randleman, North Carolina. The house, an old frame dwelling with 5 rooms and a bath, had been deeded to Mrs. Hinshaw and her husband in 1936. The husband died in 1940, whereupon Mrs. Hinshaw became the sole owner of the property. In 1949 the petitioners were married and moved into the house to live with Mrs. Hinshaw. The latter, because of hospital and doctor bills which she incurred, could not afford to bear the expenses of the house, and thereafter *204 all expenditures with respect to the house, such 441 as costs of repairs, taxes, and insurance have been borne by the petitioners. From 1949 until the house was sold in 1968 the petitioners expended about $6,100 with respect to the house, of which about $1,800 was expended from 1949 to 1964. In 1964 Mrs. Hinshaw was about 70 years old. In that year she received Social Security payments totalling $636, which she used to purchase medicine and other necessities. She also maintained a personal savings account, from which she withdrew $196.90 in 1964. Of this amount she used $160 to cover a living room suite, which apparently belonged to her daughter, and the remainder for the purchase of medicine for her own use. Mrs. Hinshaw had no other source of income. She did not pay any of the cost of food consumed in the household. During the taxable year 1964 the petitioners incurred the following items of expense in maintaining the household: Food
$1,040.00
Water
54.00
Electricity
120.00
Heat
120.00
Insurance, property taxes, and repairs to house 214.00
Total
$1,548.00 During that year they paid $286.34 of medical expenses for Mrs. Hinshaw. The fair rental *205 value of the house during the taxable year 1964 was approximately $600 per year. On April 20, 1967, Mrs. Hinshaw conveyed the house to the petitioners, "for $10 and other good and valuable considerations," specifically reserving a life estate for herself therein. [1]
In their income tax return for the taxable year 1964 the petitioners claimed a dependency exemption of $600 for Mrs. Hinshaw, and also claimed as a deduction the amount they paid for medical care of Mrs. Hinshaw. In computing the deficiency the respondent disallowed both of the claimed deductions. Opinion Section 151 of the Internal Revenue Code of 1954[2] allows a taxpayer to deduct an exemption in the amount of $600 for each dependent whose gross income during the taxable year is less than $600. Under section 152 of the Code [3] the term "dependent" includes the mother or mother-in-law of the taxpayer, provided she receives over one-half *206 of her support from the taxpayer. Section 213 of the Code allows as a deduction expenses paid by a taxpayer for the medical care of a dependent. [4]
*207 The respondent contends that the petitioners did not provide over half of the support of Mrs. Hinshaw in the taxable year 1964 and that, accordingly, they are not entitled to a dependency exemption for her for such year. Both parties agree that our determination of such issue will be dispositive of the medical expense deduction question. The burden of proof is upon the petitioners to show the total amount of Mrs. Hinshaw's support and the amount thereof which they furnished. See Bernard C. Rivers, 33 T.C. 935 The petitioners did not file a brief, but at the hearing contended that they furnished, among other things, lodging for Mrs. Hinshaw. The basis of such contention is the 442 claim that although Mrs. Hinshaw retained legal title to the home throughout the year in question she had previously orally given the petitioners equitable ownership in consideration of their maintaining the property and supporting her. Since the rental value of the house was about $600 per year, presumably the contention is that they furnished lodging for Mrs. Hinshaw of a value of about $200. Mrs. Hinshaw testified that since in 1949 she was not financially able to provide her own medical *208 care and also pay any of the expenses of the property, she gave the property to them for looking after her. She said that they did not think about making a deed but that she turned the house over to them and they "just lived on there." From 1949 until the house was sold in 1968 all expenditures with respect to the house were made by the petitioners. These included payments for repairs, insurance and taxes. To what extent improvements may have been made is not shown. It was not until 1967 that Mrs. Hinshaw conveyed the property to the petitioners, and even then she specifically retained a life estate therein. Under the circumstances we think it must be considered that during the year in question Mrs. Hinshaw was possessed of full ownership of the property and that the petitioners did not have any ownership therein. We have found no case which would support the view that there had been, under these circumstances, a prior transfer of equitable title to the property to the petitioners. [5] Accordingly, it must be considered that Mrs. Hinshaw not only furnished her own lodging for the taxable year 1964, but that she also furnished to the petitioners lodging of a value of about $400 for that *209 year. The total amount required to support Mrs. Hinshaw during the taxable year 1964 was $1,728.57, consisting of $636 of Social Security payments which she received and used to pay for medicine and other necessities, $36.90 of the amount she withdrew from her savings account and used for the purchase of medicine, $53.33 representing one-third of the $160 which she paid for covering the living *210 room suite, $200 representing one-third of the rental value of the house, the $286.34 of medical expenses paid by the petitioners for her, and $516 representing one-third of the household expenses paid by the petitioners. Of the above amounts, Mrs. Hinshaw furnished $926.23. The remainder of $802.34 was expended by the petitioners. However, inasmuch as Mrs. Hinshaw furnished lodging of a value of $400 to the petitioners and expended an amount of $106.67 (two-thirds of the cost of covering the living room suite) for their benefit, the total of those two amounts, or $506.67, should be applied against the $802.34 expended by the petitioners, leaving $295.67 as the amount of support which they furnishe Mrs. Hinshaw. See Lena Hahn, 22 T.C. 212. Mrs. Hinshaw testified that her daughter Pauline gave her some money when Pauline was working, and the petitioner Henry Linthicum testified that his wife gave her mother about $10 a week. We are unable from the record to find what exact amount may have been so given to Mrs. Hinshaw during 1964. Nor is there any evidence as to whether this was for the purpose of furnishing additional support. In any event, even if it be assumed that *211 the petitioner Pauline Linthicum gave her mother as much as $520 as support in the year 1964, we would still be forced to the conclusion that the petitioners had not furnished over onehalf of Mrs. Hinshaw's support for the year in question. Under the circumstances the respondent's determination must be approved. Decision will be entered for the respondent. 443 Footnotes
1. On January 5, 1968, she joined with the petitioners in a deed conveying the property to a purchaser for $6,500. Such proceeds, plus an additional $1,900, were used to immediately purchase another home which was taken in the names of the petitioners.↩
2. Section 151 states in part: (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * * (e) Additional Exemption for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600 * * *. ↩
3. Section 152 provides in part: (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *: * * * (4) The father or mother of the taxpayer * * *, * * * (8) A * * * mother-in-law * * * of the taxpayer, * * * ↩
4. During the period involved herein, section 213(a) of the Code provided in part as follows: (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152): (1) if neither the taxpayer nor his spouse has attained the age of 65 before the close of the taxable year - (A) the amount of such expenses for the care of any dependent who - (i) is the mother or father of the taxpayer or of his spouse, and (ii) has attained the age of 65 before the close of the taxable year * * *.↩
5. We think that probably the gist of the agreement between Mrs. Hinshaw and her daughter and son-in-law was that they should have the right to occupy the house, along with her, in consideration of their agreement to maintain the property and to support her to the extent necessary. But, even if the agreement was in effect an agreement to transfer the property to the petitioners for the stated consideration, it should be pointed out that such an oral contract to transfer an interest in real property is not enforceable under the law of North Carolina, although the promisee may recover any consideration paid in an action of quasi-contract for money had and received or under the doctrine of unjust enrichment. Pickelsimer v. Pickelsimer, 257 N.C. 696, 127 S.E. 2d 557↩ (1962).